**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **STEVEN J. FRIEDMAN and** | ) | |
| **MICHAEL J. KREINER** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 22 C 2253** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **WOLFSPEED, INC., f/k/a CREE, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

On May 26, 2023, the defendant filed a Motion to Compel the plaintiffs to produce a decade's worth of their *and their spouses'* tax returns. For the following reasons, the Motion [Dkt. #56] is denied.

This case, filed over a year ago, seems to be rather uncomplicated. It concerns itself with the amount of commissions the two plaintiffs were paid from October 1, 2015, until June 30, 2018. They were both paid exactly $588,325 in commissions in that period, and they both claim they were underpaid by exactly $294,162.50. [Dkt. #1-1, Pars. 20-27]. Defendant contends they were paid what they were owed and argues that if one plaintiff was underpaid commissions, that amount was overpaid to the other plaintiff who is responsible for that amount. [Dkt. #23, at 16; #24, at 3-4].

Discovery began nine months ago, and on September 8, 2022, the defendant served plaintiffs with its First Set of Interrogatories and Requests for Production of Documents, which included a sweeping request that went well beyond commission payments to the plaintiffs during the pertinent thirty-two-month period. The Request demands that the plaintiffs:

> Produce all documents, including but not limited to federal and state tax returns (including all attachments and schedules) filed by you, your spouse (if you are married), and any and all corporations, partnerships, or other business entities in which you or your spouse (if you are married) is a partner or has at least 10% controlling interest, W-2's, pay stubs, or 1099 Forms, that relate in any way to your income earned in the years 2012 through the present. If you do not have those documents in your possession, please inform us immediately and we will provide to you for signature forms to obtain these documents from the IRS.

[Dkt. #58-1]. The plaintiffs timely objected to this document request:

> on the ground that it requests documents which are neither relevant nor likely to lead to the discovery of relevant information, in that the income of Plaintiffs' spouses, Plaintiffs' income since 2018, and Plaintiffs' income from sources other than [defendant] form no part of any issue in this case. Plaintiffs further object on the ground that this document is overbroad. Plaintiffs further object on the ground that the requested documents are private and confidential. See 26 U.S.C. § 6103(a).

[Dkt. #58-2]. Plaintiffs produced their W-2 wage and tax statements from defendant for the years 2012 through 2019. Defendant, apparently satisfied, did nothing more about it for the next five long months. [Dkt. #57, at 4; #58, Pars. 5-6].

Defendant claims that the tax return issue came back up when the plaintiff, Michael Kreiner, was deposed on March 14, 2023. [Dkt. #57, at 4]. Mr. Kreiner said that he and his co-plaintiff:

> had always made the agreement that our sales were our sales . . . . I don't know who made more when but we had an agreement between us, separate contract, that essentially just said whatever the total amount of money is, we're gonna split that. So if his was more, he sent me money. If mine was more, I sent him money.

[Dkt. #58-3, at 194]. Defendant says that was its inkling that the two plaintiffs were working as a team. But reading the plaintiff's Complaint, the fact that the two plaintiffs being paid the exact amount of commissions and claiming to be underpaid by the exact amount would make one curious. That is not something that tends to happen randomly. But we shall take the defense claim at its word that they had no idea until the March 14, 2023 deposition of this claimed fact.

2

Even so, at the status hearing on March 16, 2023, a couple of days *after* this supposedly significant revelation, counsel for *both* sides reported that discovery was complete, except for two depositions that the plaintiff is attempting to schedule of non-employees of the defendant. Discovery had been set to close on March 28, 2023 since August of 2022. Counsel *for the defendant* made no mention of any outstanding document requests or newly discovered side deals between the plaintiffs and, in fact, *opposed* any extension of discovery past that date. I indicated that I would be inclined to extend discovery beyond March 28th for the limited purpose of taking those two depositions, but only if a proper motion were filed. [Dkt. #47].[1] No motion to extend discovery was filed,[2] and, as a result, discovery closed on March 28th as scheduled.

As such, the defendant's motion to compel, not filed until May 26, 2023 [Dkt. #56] comes two months too late. That's reason enough to deny it. It's rarely an abuse of discretion to deny a motion to compel that comes after the close of discovery. *Haynes v. Alliant Food Serv., Inc.*, 93 F.

---

[1] On March 17, 2023, defendant's counsel sent plaintiffs' counsel a letter complaining about plaintiffs' failure to produce tax returns responsive to Document Request No. 14. [Dkt. #57, at 5]. Defendant argued that the tax returns were "relevant for numerous reasons including because Plaintiffs have admitted in their [March 14, 2023] depositions that they made payments between them related to income received from [defendant]." [Dkt. #58-6]. Given this, why the defendant opposed a discovery extension – and made no complaints regarding outstanding discovery to the court at the status hearing is puzzling.

[2] On April 13th, two weeks after discovery had closed, the parties filed a "Joint Status Report" informing the court that they had taken it upon themselves to extend discovery for the purpose of plaintiff taking depositions on April 24 and 25, 2023. [Dkt. #51]. Parties cannot simply extend – or reopen, as the case would have been here – discovery on their own, of course. *See, e.g.*, Fed.R.Civ.P. 16(b)(4)("Modifying a Schedule. A schedule may be modified only for good cause and with the judge's consent."); *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 174 (N.D. Ill. 2018)("The parties do not "own" the discovery schedule, and cannot suspend or extend discovery in accordance with their own desires."); *Jones v. UPR Prod., Inc.*, 2016 WL 6518652, at *1 (N.D. Ill. 2016)("Lawyers and parties do not own the discovery schedule. There is an overriding public interest in the prompt resolution of legal disputes. That interest transcends the immediate interest of the parties...."). One supposes, however, that the parties may engage in some independent discovery after the deadline passes provided that they do not require any court intervention.

App'x 71, 73–74 (7th Cir. 2004); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir.2001); *Africano v. Atrium Med. Corp.*, No. 17 CV 7238, 2019 WL 10891868, at *1 (N.D. Ill. July 3, 2019); *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, No. 05 CV 6022, 2007 WL 1673563, at *2 (N.D. Ill. June 8, 2007) (collecting cases). Magistrate judges have scores of cases in which they are supervising discovery. When parties ignore discovery deadlines and bring discovery disputes to court weeks or months after discovery has been closed, it takes judicial time and resources away from other cases and inconveniences other litigants waiting in the queue. *See, e.g., Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991)("Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention."); *Mill Creek Country Club, Inc. v. Evergreen All. Golf Ltd., LP*, No. 19 C 1971, 2023 WL 2843540, at *1 (N.D. Ill. Apr. 7, 2023)(". . . discovery without end in one case takes time away from the many other cases in the queue.").

Courts might excuse a late motion to compel where the moving party has reasonable and persuasive justification for its untimeliness; but, absent such justification, courts' general aversion to unjustified delays usually results in denials of motions to compel filed after the close of discovery. *See Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000) (noting that a party has "no grounds for complaining" about the denial of a motion to compel filed two months after the completion of discovery where it provides no excuse for its tardiness); *Feit Elec. Co., Inc. v. CFL Techs. LLC*, No. 13 CV 9339, 2023 WL 3436346, at *6 (N.D. Ill. May 12, 2023); *Africano*, 2019 WL 10891868, at *1. Here, the defendant offers no excuse for the two-month delay, and no explanation for doing nothing about the request for tax returns from October 2022 to March 2023. Moreover, the defendant opposed any extension of the March 28, 2023 discovery cutoff that might

have accommodated a late motion to compel.[3]  With all deference, that's not diligence, and the law demands diligence. As the Seventh Circuit has put it, "[i]n light of [the] lack of diligence in pursuing the perceived inadequacies in discovery, the district court did not abuse its discretion in denying [the] motion to compel as untimely." *Packman*, 267 F.3d at 647.

But, beyond that, the party requesting discovery bears the initial burden of establishing its relevancy – the basic requirement of any discovery request. *O'Connor v. Ford Motor Co.*, No. 19 C 5045, 2022 WL 16757593, at *1 (N.D. Ill. Oct. 21, 2022); *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, No. 18 C 0825, 2020 WL 1701861, at *8 (N.D. Ill. Apr. 8, 2020); *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-cv-02436, 2019 WL 6052366, at *2 (N.D. Ill. Nov. 15, 2019); *Forth v. Walgreen Co.*, No. 17 C 2246, 2019 WL 10255628, at *6 (N.D. Ill. July 10, 2019); *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, No. 16 C 9788, 2018 WL 4356594, at *3 (N.D. Ill. Sept. 12, 2018).

In its opening brief, the defendant fails to make a case for the relevance of a decade's worth of tax returns showing all income, let alone a decade of tax returns from their spouses.  Simply citing a couple of cases where a court did find tax returns relevant doesn't necessarily show ten or eleven years of tax returns are relevant here.

The defendant relies extensively on *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 75 (7th Cir. 1992). [Dkt. #57, at 7-9]. But in that case, the defendant showed that the plaintiff's tax returns were relevant to a particular issue in that particular case:  the issue of whether the plaintiff was a "dealer" under the  Wisconsin Fair Dealership Law.  *Poulos*, 959 F.2d at 74 ("7th Cir. 1992); *Poulos v. NAAS*

---

[3] The defendant did not even attempt to have a Local Rule 37.2 meeting regarding the tax returns until May 2nd, over a month after discovery had closed. [Dkt. #58, Pars. 11-13; #58-7].

*Foods, Inc.*, 132 F.R.D. 513, 522 (E.D. Wis. 1990). To qualify as a dealer, the plaintiff had to show a community of interest with the defendant; he had to establish that he devoted 50 percent to 60 percent of its time to the defendant's product or service in order to qualify as a dealer under the statute. *Poulos*, 132 F.R.D. at 522; *Ziegler Co. v. Rexnord, Inc.*, 139 Wis. 2d 593, 601 (1987). As such, the "[plaintiff's] income from other sources [wa]s at issue in determining the amount of sales revenue and income that the [plaintiff] generate[d] from the sale of the [defendant's] produce as compared to all other sources of revenue for the [plaintiff]. *Poulos*, 132 F.R.D. at 522. Obviously, there's absolutely nothing remotely like that going on in this case. Nor are the plaintiffs claiming damages in lost income following the termination of their contract. *Compare Poulos*, 959 F.2d at 74 ("Further, [plaintiff's] income was relevant to the amount of his damages after [defendant] terminated him.").

The other case the defendant cites, *Schwartz v. Dickstein*, 59 A.D.2d 693, 693 (N.Y. App. Div. 1977), does not support the defendant's position. There, the defendant's counterclaim alleged that the plaintiff violated his exclusive sales agreement with the defendants by maintaining a showroom and selling goods on behalf of others to the detriment of the defendants. 59 A.D.2d at 693. The plaintiff kept no records of sales for the other companies, so he had to produce his tax returns. *Id.* There is no counterclaim here; there is not even an affirmative defense suggesting that the plaintiffs were violating their contracts with the defendant in such a manner. [Dkt. #23, at 15-16]. Indeed, the defendant even asserts that its "offer letters to Plaintiffs do not constitute a contract." [Dkt. #23, at 15].

Similarly, the defendant argues that the tax returns might reflect the "level out" payments plaintiffs made to each other and that this is a "core issue" in the case. Defendant points out that

Case: 1:22-cv-02253 Document #: 63 Filed: 06/21/23 Page 7 of 9 PageID #:361

"Plaintiffs assert that in fiscal year 2015 [defendant] 'unilaterally modified' the terms of the commission payment section in their offer letters, which states that each Plaintiff would earn a certain percentage of commissions 'on the invoiced sales price (before taxes, shipping and other added charges) of all shipped product which you are primarily responsible for selling directly to end customers.'" [Dkt. #57, at 2-3]. That might make out a case for the relevance of the plaintiff's tax returns from 2015 through 2018, but not for the sweeping request the defendant made here.

It must not be forgotten that this case is about the amount of commissions due and the amount of commissions paid to the plaintiffs from October 1, 2015, until June 30, 2018. What do the plaintiffs' tax returns from 2012 or their tax returns from 2022 have to do with it? What do their spouses' tax returns from 2012 through present have to do with it? Defendant does not provide any real answers in its opening brief.

As it happens, the defendant's reply brief explains its theory of relevance a bit more fully, and it sheds some light on why the defendant made such a broad request. Defendant contends, as it did in its opening brief, that plaintiff's income from other sources is relevant to the question of whether the plaintiffs were devoting their full-time efforts to their work with the defendant, including whether they were generating income from other sources. [Dkt. #61, at 3]. But, under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, . . . ." Given defendant's broader idea of relevance, it should be noted that, previously, Fed.R.Civ.P. 26(b)(1) was indeed drawn in broader terms going a bit beyond the claims and defenses in the case and encompassing the general subject matter.

It stated that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, . . . ." Courts rightfully interpreted that formulation as allowing inquiry into any issue that is or *may be* in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978).

But the Rule was amended in 2015 to limit discovery to claims and defenses actually in the case. *See In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020)(" . . . the 'subject matter' reference has been eliminated from the rule, and the matter sought must be 'relevant to any party's claim or defense.' . . . That change, however, was intended to restrict, not broaden, the scope of discovery."); *City of Chicago v. Smollett*, No. 19 C 4547, 2020 WL 3643121, at *2 n.1 (N.D. Ill. July 6, 2020); *Polyone Corp. v. Lu*, No. 14 C 10369, 2015 WL 9489915, at *2 (N.D. Ill. Dec. 30, 2015) ("Effective December 1, 2015, Rule 26(b)(1) was amended to eliminate the court's discretion to expand discovery to the subject matter of the action . . . .").

Thus, we are limited to claims and defenses that actually have been made a part of this case. *See Trustees of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, No. 1:19-CV-2965, 2022 WL 2341290, at *2 (N.D. Ill. June 29, 2022); *Woodson v. 3M Co.*, No. 3:21-CV-50244, 2022 WL 832513, at *1 (N.D. Ill. Mar. 21, 2022); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916, 924 (N.D. Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). That limitation does not allow for discovery in this case of a decade's worth of tax returns or related documents relating to plaintiffs' income earned in the years 2012 through the present.

Accordingly, the defendant's Motion to Compel [Dkt. #56] is denied. A status conference is set for June 23, 2023 at 9:30 a.m. to discuss the possibility of conducting a settlement conference now that discovery has been completed.

**ENTERED:** _____

**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 6/21/23

9